572

Amelio B. PALLUCONI

v.

The UNITED STATES.

No. 420-54.

United States Court of Claims.

June 5, 1956.

Paul R. Harmel, Washington, D. C., for plaintiff. Geiger & Harmel, Washington, D. C., were on the briefs.

Philip W. Lowry, New York City, with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff's suit is for retired pay. The case is before us on the report of the Commissioner, exceptions thereto, briefs, and argument.

Plaintiff, a paratrooper, was dropped behind the enemy lines during the attack of the American forces on Sicily. He was captured by the Germans on July 10, 1943, and was their prisoner of war until liberated by the Russians in January 1945. During this time he suffered great hardships, as a result of which he contracted rheumatic fever, which affected his heart. He was in the prison infirmary from October 1943 to March 1944, attended by American doctors, who were also prisoners of war.

During his confinement in prison his weight dropped from 175 pounds to around 110 pounds; but when liberated by the Russians he was given the run of the country, and rapidly regained 40 of the pounds he had lost.

After liberation, he was sent by the Russians to Odessa, and from there he was taken to Naples by a British vessel. There he was given a physical examination by the United States Army Medical Corps, and was then sent to the United States by troopship, arriving at Fort Benning, Georgia, in April 1945.

He was then sent to a recreation center in Miami, after which he was assigned to a parachute infantry battalion, and then to the Fourth Infantry Training Battalion. He took an infantry refresher course, and was then assigned to this battalion as a training inspector. He remained on such duty until released to inactive duty about a year later.

In the early part of 1946, he learned that he was about to be sent to Japan; whereupon, he requested relief from active duty. He was relieved on May 24, 1946, after having undergone a terminal physical examination.

While undergoing this physical examination plaintiff advised the doctors he had had rheumatic fever with a heart involvement while a prisoner of war, and that he had shortness of breath and swelling of the joints on moderate exercise. Plaintiff, however, did not request discharge for physical disability, and he was not discharged for this reason, although a note was made of this medical history.

On the basis of this physical examination, the Veterans' Administration rated plaintiff 10 percent disabled. Three years later, on March 16, 1949, on the basis of their examination of plaintiff at that time, they rated him 60 percent disabled, by reason of heart disease.

Shortly thereafter plaintiff wrote the Adjutant General applying for a pension. The Adjutant General replied on September 22 that while there was some doubt about plaintiff's eligibility therefor, he would nevertheless order him before a retiring board, if the evidence showed that plaintiff was physically disabled at the time of his separation from the service. A year later, plaintiff made formal application to appear before a review board, and, in response thereto, the Adjutant General notified him to appear before a medical board at Camp Atterbury, Indiana. This board found that plaintiff had arteriosclerotic heart disease with angina of effort, and that he became incapacitated for military duty in August 1943. In accordance with the recommendation of this medical board, plaintiff then, on February 19, 1951, appeared before a physical evaluation board, which confirmed the findings of the medical board and found that plaintiff was 60 percent disabled.

However, on March 14, 1951, the Army Physical Review Council reversed the action of the Physical Evaluation Board on the ground that it was not substantiated by the evidence, and for certain technical reasons, and sent the case back to the Physical Evaluation Board.

Then on July 16, 1951, the Adjutant General notified plaintiff that the proceedings of the Physical Evaluation Board were being set aside, because of the decision of the Comptroller General, holding that reserve officers who had been released from active duty, not by reason of physical disability, had no right to be brought before a physical evaluation board or a retiring board, for the purpose of possible retirement for physical disability with pay. As a result, plaintiff was denied the right to appear before an Army retiring board.

Nearly a year later, plaintiff made application to the Board for Correction of Military Records for a correction of his record to show that he was 60 percent disabled by reason of arteriosclerotic heart disease with angina of effort. This board made a thorough review of plaintiff's military records, his medical records, and the records of the Veterans' Administration, and concluded that the findings of the Physical Evaluation Board on February 19, 1951, above referred to, were based on plaintiff's physical condition at that time, rather than on the date of his separation from the service on May 24, 1946, and that there was no evidence of any error or injustice in plaintiff's separation from active service not for physical disability. Plaintiff was so notified on October 20, 1953.

Thereafter, on its own motion the Army Board for Correction of Military Records requested that plaintiff be sent to Walter Reed Army Hospital for medical examination and appearance before a medical board and physical evaluation board, and that their findings and the prior proceedings in plaintiff's case be forwarded first to the Army Physical Review Council, and then to the Army Board for Correction of Military Records, for further consideration.

Accordingly, plaintiff was admitted to Fort Sheridan Infirmary on December 27, 1953, where the records were exam-

ined and plaintiff was given a further physical examination, as the result of which the medical board found that plaintiff's old rheumatic fever was inactive, without heart involvement, and that at the time of his separation from the service he was under no physical disability which was sufficient to incapacitate him for further duty.

On September 14, 1954, the Army Board for Correction of Military Records further considered the matter and concluded that there was no basis for changing their original determination, to wit, that there was no error in the release of plaintiff to inactive duty not for physical disability.

Such are the facts.

All the members of this court have great sympathy for the plaintiff on account of the hardships and, indeed, the inhuman treatment to which he was subjected while a prisoner of war; but the sole question before us is whether or not those agencies, which were given authority by Congress to determine plaintiff's right to retired pay on account of physical disability, acted fairly and impartially and according to law. If they did, their findings are conclusive upon us.

There is not the slightest evidence of arbitrary or capricious action; on the contrary, plaintiff's case was given careful and sympathetic consideration. It is true, as we have heretofore held, that the Comptroller General was wrong in saying that a reserve officer who had been released to inactive duty, not on account of physical disability, such as plaintiff, was not entitled to apply to appear before the physical evaluation board or a retiring board; and, hence, the Adjutant General was wrong in saying that its findings were null and void; but the findings of this board were reversed by the Army Physical Review Council; and, in addition, the Board for Correction of Military Records thoroughly reviewed the findings of this physical evaluation board and determined that they were based on plain-

tiff's condition at the time he appeared before that board, and not at the time of his release to inactive duty. It is his condition at the time he was released to inactive duty that determines his right to retired pay. The Board for Correction of Military Records determined that his physical condition at that time did not justify his retirement for physical disability, and the Secretary of War has approved those findings.

That decision is conclusive upon us, since it was arrived at fairly and impartially, and in accordance with law.

It results that plaintiff's petition must be dismissed.

It is so ordered.

LARAMORE and MADDEN, Judges, concur.

JONES, Chief Judge (dissenting).

I would grant plaintiff retirement pay from February 19, 1951, the date when the physical evaluation board found him disabled.

The evidence discloses that plaintiff served as a paratrooper during World War II; that he was dropped behind the lines of the American forces in Sicily, that he was captured, suffered great hardship, that his weight dropped from 175 to around 110 pounds, as a result of which he contracted rheumatic fever which affected his heart; that he remained a prisoner from July 1943 to January 1945, and that there was lack of adequate medical treatment during that period. When the record as a whole is considered, there can be no doubt whatever that plaintiff's disability had its inception in the service. This is emphasized by his record as an athlete, his activity and his personal health prior to that time.

While there is possibly not sufficient evidence to show beyond question that his condition was actually disabling at the time he was released to inactive service in January 1946 it is certain that it became disabling as of February 19, 1951, when the Physical Evaluation

Board found him disabled. The officials who nullified the findings of the Physical Evaluation Board on a mistaken interpretation of the law and in the belief that that board had no jurisdiction, admitted in effect that plaintiff was disabled at the time of his first complete medical examination on February 19, 1951. Their stated conclusion was that the Physical Evaluation Board and the medical officers who examined plaintiff in connection therewith relied on his condition which they found on examination in 1951 as a basis for concluding that he was disabled at the time of his release from active service in 1946. The facts would seem to justify the Physical Evaluation Board's action, but the discretion was lodged in the officials who finally passed upon the matter, and I do not think the facts here would justify us in finding their action was arbitrary, or that it was an abuse of discretion for them to hold that the record does not show that plaintiff was disabled at the time of his release from active service.

This case raises the question which has been before the court repeatedly as to whether one who is sick or wounded while in the service in such manner as not to be disabled at that time, but whose condition may at a later date become disabling, may be retired as of the time when the disease or wound has progressed to the point where it is disabling.

Since there is no doubt that plaintiff's condition originated or had its inception in the service, and since it is practically admitted that his condition had progressed to the point of complete disability in 1951, I think he should have been granted retirement from that time for the reasons which I stated in my dissenting opinions in the cases of Holt v. United States, Ct.Cl., 140 F.Supp. 268 and MacFarlane v. United States, Ct.Cl., 140 F.Supp. 420.

This is one of those rare cases where the evidence of service connection and the proof of disability, incapacitating at least as early as February 19, 1951, are so overwhelming as to remove any reasonable doubt as to the essential facts.

The findings of the trial commissioner as set out in findings 14 to 20, inclusive, would justify a conclusion that plaintiff was incapacitated and should have been released to inactive service in 1946 on account of disability. The numerous aches and pains (as described in findings 14 and 15) which plaintiff suffered during the last few months of his active service and his inability after his release from a prisoner of war status to do any substantial physical work before his release are very convincing facts and are practically undisputed.

A medical board of three officers of the United States Army, and the Physical Evaluation Board both found plaintiff disabled as early as February 19, 1951. There has never been any finding to the contrary. The Army Physical Review Council, and the Army board merely found on a review of the record that there was not sufficient evidence to establish disability at the time of plaintiff's release to inactive service in 1946.

This leaves the record that he was disabled as of February 19, 1951, completely unchallenged.

Section 519 of the Career Compensation Act of 1949, 63 Stat. 802, 37 U.S.C.A. § 318, retains all retirement rights which an officer had received or was entitled to receive prior to such act.

Section 933, Title 10, United States Code, in effect at the time of plaintiff's service is as follows:

*"Disability found by retiring board to be incident of service*

"When a retiring board finds that an officer is incapacitated for active service, and that his incapacity is the result of an incident of service, and such decision is approved by the President, said officer shall be retired from active service and placed on the list of retired officers."

The quoted provision, as I interpret it, clearly provides that any time a re-

tiring board finds that an officer is incapacitated for active service, and that such incapacity had its inception in the service, he is entitled to retirement pay when the condition becomes disabling.

This fits plaintiff's case like a glove. Because of a misinterpretation the higher officials who declined to permit him to go before a retiring board arbitrarily denied plaintiff his statutory rights. While it was due to a misunderstanding, the results were the same as if the denial of rights had been intentional.

It is difficult to understand the strange reluctance of the intermediate higher officials to grant a hearing in considering plaintiff's application for retirement. The only full hearing plaintiff ever had was before the physical evaluation board, which after examination, tests, observation and questioning found him disabled from 1943, a date long before his release to inactive duty. This was set aside and disregarded on the erroneous belief that the evaluation board had no jurisdiction. It is difficult to thread one's way through the maze of boards and special groups that were set up, and to determine the jurisdiction of each.

But this much is certain—if that board's finding was to be disregarded, some other board, such as the Board for Correction of Military Records, a Disposition Board, or a Retiring Board, should have granted a full and fair hearing before taking adverse action. Lemly v. United States, 75 F.Supp. 248, 109 Ct.Cl. 760.

Plaintiff's case was not acted upon by the Retiring Board or a Disposition Board, and the Board for Correction of Military Records declined to give plaintiff a hearing, standing on the statement that the facts of record did not justify the Physical Evaluation Board's findings of complete disability, that the findings were not supported by substantial evidence, that that board had relied on plaintiff's condition in 1951, and that it had no jurisdiction in the first place. I do not believe that plaintiff could be blocked off in this way without the Correction Board's or some other board's action being classed as arbitrary.

No one who reads this record can fail to be impressed with the merits of the case. To deny plaintiff retirement pay completely would be unjust.

LITTLETON, Judge, joins in the foregoing dissent.