UNITED STATES of America, Plaintiff,

v.

John FORMA and Patricia
Forma, Defendants.

UNITED STATES of America, Plaintiff,

v.

John FORMA and Patricia
Forma, Defendants.

UNITED STATES of America, Plaintiff

v.

Carole FORMA, Defendant.

No. 88 Civ. 6458 (RWS).

United States District Court,
S.D. New York.

Feb. 26, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Gabriel W. Gorenstein, Richard W. Mark, Nancy G. Milburn, Asst. U.S. Attys., of counsel), for U.S.

Silverman, Collura & Chernis, P.C., New York City (Paul Chernis, Anthony M. Collura, Ronald A. Balzano, of counsel), for defendants.

## OPINION

SWEET, District Judge.

The United States of America (the "Government") has moved to vacate the prior judgment and order against it pursuant to Rule 55 or Rule 60 of the Federal Rules of Civil Procedure, and for an order dismissing the counterclaim brought against it by John and Patricia Forma (the "Formas") for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3). In the alternative, the Government seeks to vacate the prior judgment and order against it for further proceedings or for a hearing pursuant to Rule 55(e).

For the reasons set forth below, the Government's motion to dismiss the Formas' counterclaim is denied. The motion to vacate the Court's previous order and for a hearing pursuant to Rule 55(e) is granted.

### Prior Proceedings and Facts

The Government brought this action to reduce its alleged assessments of the Formas' tax liability to judgment. The For-

mas, New York State residents, are married to one another.

The Government filed a complaint against the Formas in September 1988. The complaint alleges in its first two counts that John Forma owed the Government back taxes, interest, and penalties for 1977 and 1978, and in its third count that John and Patricia Forma both owed the same for 1982. In all three counts, the Government alleges that tax deficiency assessments were made and that notice of these assessments was duly served on the Defendants. Complaint ¶¶ 8, 9, 13, 14, 18, 19. The Government also alleges in Counts 1 and 2 that John Forma executed a number of IRS Form 872's extending the statute of limitations period for assessing his income tax liability for 1977 and 1978. The assessments for 1977 and 1978 allegedly were made within the allowable period.

The Defendants first moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). The Government opposed this motion and filed its own motion for summary judgment. The Formas conceded the validity of the assessment for 1982 (the complaint's third count) and all but $29,804 of the 1978 assessment.[1] The Honorable John M. Walker denied both motions on the remaining claims in an opinion dated November 13, 1989. *United States v. Forma*, 88 Civ. 6458, slip op., 1989 WL 222479 (S.D.N.Y. Nov. 13, 1989).

As to the Defendants' motion, Judge Walker found that the Complaint facially stated a valid claim. *Id.* at 5. The Defendants argued that the Government had failed to comply with the statutory requirements by not filing a summary record of the assessment, known as a Form 23–C, and by not mailing a notice of deficiency to Forma. *See* 26 U.S.C. ("IRC") § 6213(a). Judge Walker noted that the Government was not obligated to plead compliance with the statute but would be obligated to pro-

duce these records if and when the Defendants moved for summary judgment.

In making its argument for summary judgment, the Government contended that Forma had waived the requirement that a notice of deficiency be sent to him by executing three IRS Forms 870 (Offer of Waiver of Restrictions on Assessment and Collection of Tax and of Acceptance of Overassessment). *See* IRC § 6213(d). Forma stated that he never signed the waivers[2] and the Government was unable to produce the disputed documents. Judge Walker thus found that there was a triable issue of fact and denied the Government's motion for summary judgment as well. *Forma*, slip op. at 8.

Judge Walker was elevated to the Second Circuit soon after issuing the opinion. The case was then transferred to this docket for further proceedings.

Settlement conferences were then held between the parties, but to no avail. The Formas moved on September 13, 1990, for leave to file an amended answer. The motion was unopposed by the Government and thus granted on September 28, 1990. The amended answer was filed on October 12, 1990, and included a counter-claim for $250,000 plus interests and costs. The $250,000 includes $149,282.52 allegedly paid toward satisfying the disputed assessments, and over $100,000 for damages suffered from the "forced" sale of the Formas' residence.

The action was soon placed on the Court's Ready Trial List. Before it was called, the Government and the Formas entered into a stipulation "suspending" the action for sixty days. The stipulation was signed on December 13, 1990, and provided that either party could move to reinstate the action upon notice.

After the suspense period expired, the Formas moved to enlarge the period within which they could reinstate their counter-claim. The Government did not oppose their motion, so it was granted on April 5,

---

1. The Formas have conceded only the amount of taxes due for 1982. *See United States v. Forma*, 88 Civ. 6458, slip op. at 2 n. 2, 1989 WL 222479 (S.D.N.Y. Nov. 13, 1989).

2. Forma admitted signing one Form 870 that apparently represented a $14,871 deficiency for 1978. Forma denied signing a waiver for any other amount.

1991. The Government never reinstated its claims and failed to answer the counterclaim within the sixty days allotted it by Rule 12(a). The Formas therefore moved for entry of a default judgment on May 2, 1991. The Special Assistant United States Attorney ("Special AUSA") handling the matter allegedly advised chambers and the Formas' counsel that there would be no opposition to the entry of a default judgment. The judgment was thus signed by the Court on June 4, 1991, and entered on June 6.

The Chief of the Tax Unit ("Tax Unit Chief") contends that he first learned of the Formas' counterclaim and of the entry of the default judgment in June 1991. The Special AUSA allegedly lacked the authority to consent to the default judgment and was instructed to move for vacatur of the judgment.

The Formas, meanwhile, encountered difficulties in enforcing their judgment. The Internal Revenue Service (the "Service") told the Formas' counsel that the United States Attorney's Office was considering an appeal. At a conference held before the Honorable Sharon E. Grubin, to whom the matter had been referred for a determination on damages, on July 17, 1991, the Formas related their difficulties with the Service. The Special AUSA represented that there would be no appeal, and Magistrate Judge Grubin asked him to write a letter stating so on the Formas' behalf. The letter was written on July 25, 1991, and sent to the Service. The Government now contends that the letter was never approved and that it does not appear within its master file of letters.

The Formas were still unable to collect their judgment. They therefore brought an Order to Show Cause on September 10, 1991, seeking a mandatory injunction against the Service to heed the judgment and a contempt order. On September 16, the Special AUSA served a motion to vacate the judgment. The Government's principal argument was that the Special AUSA had exceeded his authority and ignored office policy in consenting to the entry of the default judgment. The

Government now contends that the Special AUSA failed to notify his superiors of the Order to Show Cause, even though it was served upon the United States Attorney's Office, and that the memorandum of law and declaration submitted in support of the Government's motion were not approved by the Tax Unit Chief, as required by office policy.

Oral argument was heard on both parties' motions on September 20, 1991. That day, the Government's motion was denied and an order signed directing the Service to satisfy the Judgment of $158,262.90 signed in June, to vacate all liens filed against the Formas property and income with respect to the underlying claims in this action, and to cease all collection efforts against the Formas with respect to these claims. The motion for contempt was denied at that time, but a hearing was scheduled for October 7, 1991, on the contempt application provided the Service had not complied with the order by that date. The Government alleges that it did not learn of this order until it was faxed to the Service.

On October 1, 1991, another Assistant United States Attorney wrote the Court to inform it that he was replacing the Special AUSA as the Government's counsel and to seek an extension of time pursuant to Rule 6(b) within which it could conform with the order of September 20 and to file the motion presently under consideration. The Government's Rule 6(b) motion was granted on the condition that it file the motion by October 7, 1991, which it did. Oral argument was heard on December 26, 1991, and the motion considered submitted as of that date.

*Discussion*

The default judgment which the Government seeks to vacate was entered pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Rule 55 provides in pertinent part:

(a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit

or otherwise, the clerk shall enter the party's default.

(b) Judgment. Judgment by default may be entered as follows:

. . . .

(2) *By the Court.* In all other cases the party entitled to a judgment by default shall apply to the court therefor. . . . If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

(c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

(d) Plaintiffs, Counterclaimants, Cross–Claimants. The provisions of this rule apply whether the party entitled to the judgment by default is a plaintiff, third-party plaintiff, or a party who has pleaded a cross-claim or counterclaim. In all cases a judgment by default is subject to the limitations of Rule 54(c).

(e) Judgment Against the United States. No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court.

Fed.R.Civ.P. 55.

The application to enter a default judgment was brought pursuant to Rule 55(b)(2) on at least three days notice. The motion was granted, and judgment entered when the Government failed to oppose the application. In this respect, the manner in which the judgment was entered is not attacked procedurally.

■ The Government correctly notes, albeit in a footnote, that there is a two-step process involved in obtaining a default judgment. First, an entry of default must be obtained. *See* Fed.R.Civ.P. 55(a); Local Rule 10; *Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir.1981). Then, a motion for judgment made pursuant to Rule 55(b). *See* Fed.R.Civ.P. 55(b); *Meehan,* 652 F.2d at 276. In the Southern District of New York, a copy of clerk's certification of the notation of the default must accompany the motion, *see* Local Rule 10. The difference between the entry of default and a default judgment is substantive, as a less rigorous standard is used to vacate an entry of default than a default judgment. *See* Fed. R.Civ.P. 55(c); *Meehan,* 652 F.2d at 276. However, the entry of the default judgment at issue was not contested when the original motion was made, the papers submitted in support of the application plainly stated that relief was sought pursuant to Rule 55(b), and the Government still has not filed or moved for leave to file an answer. The underlying default will therefore be treated as a judgment entered pursuant to Rule 55(b), triggering Rule 60(b)'s vacatur standard. *See* Fed.R.Civ.P. 55(c).

### I. *Subject Matter Jurisdiction*

The Government first contends that the judgment is void for lack of subject matter jurisdiction over the counterclaim. Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that:

[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

If subject matter jurisdiction is lacking over the Defendants' counterclaim, then the default judgment must be vacated and the counterclaim dismissed. *See* Fed. R.Civ.P. 60(b)(4).

The Government initiated this action by filing a complaint to reduce assessments it allegedly made for the tax years 1977, 1978, and 1982 to judgment in September 1988. In the third paragraph of its complaint, it alleged that jurisdiction was predicated under 28 U.S.C. §§ 1340, 1345. Together, the statutes confer original jurisdiction over matters brought by the United States pursuant to the Internal Revenue Code.

The Government essentially asserts three arguments against the exercise of subject matter jurisdiction over the Defendants' counterclaim. First, that sovereign immunity has not been waived in general. Second, the Formas failed to satisfy the statutory prerequisites for bringing such an action. Third, the doctrine of Equitable Recoupment is inapplicable. The paramount fact to consider here, however, is that the Government initiated these proceedings.

Sovereign immunity is, of course, a myth which has devolved into its present state in our jurisprudence from the ancient notion that "The king can do no wrong." 1 W. Blackstone, *Commentaries* \*238; *see United States v. Dalm*, 494 U.S. 596, 622, 110 S.Ct. 1361, 1375, 108 L.Ed.2d 548 (1990) (Stevens, J., dissenting). As is commonly recited, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586–87, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941) (citations omitted); *see, e.g., Dalm*, 494 U.S. at 608, 110 S.Ct. at 1368.

■ Congress has enacted a statute conferring subject matter jurisdiction on federal courts for suits against the United States that seek the recovery of wrongfully assessed or collected taxes. *See* 28 U.S.C. § 1346(a)(1). A prerequisite for bringing such an action is that the taxpayer must first pay the Service's full assessment, including penalties and interest. *See Flora v. United States*, 362 U.S. 145, 177, 80 S.Ct. 630, 647, 4 L.Ed.2d 623 (1960); *Magnone v. United States*, 902 F.2d 192, 193 (2d Cir.1990) (per curiam). If the taxpayer has not made the required payment, the *taxpayer* may not bring a refund suit.

For well over a century, however, federal courts have sensibly acknowledged that when the Government brings an action against a party "who has a legal claim against them, it would be a very rigid principle to deny to him the right of setting up such claim in a court of justice, and turn him around to an application to Congress." *United States v. Ringgold*, 33 U.S. (8 Pet.) 150, 163, 8 L.Ed. 899 (1834); *see also United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 511, 60 S.Ct. 653, 655, 84 L.Ed. 894 (1940); *Bull v. United States*, 295 U.S. 247, 261–62, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935); *United States v. State National Bank of Boston*, 96 U.S. 30, 24 L.Ed. 647 (1878); *The Siren*, 74 U.S. (7 Wall.) 152, 154, 19 L.Ed. 129 (1868).

■ Under like principles, the Supreme Court has developed the doctrine of "equitable recoupment" to prevent the unjust calculation of taxes applicable to a single transaction. *See Dalm*, 494 U.S. at 601–11, 110 S.Ct. at 1365–70; *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 299–300, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946); *Stone v. White*, 301 U.S. 532, 539, 57 S.Ct. 851, 854, 81 L.Ed. 1265 (1937); *Bull*, 295 U.S. at 263, 55 S.Ct. at 701. Equitable recoupment may be invoked where a single transaction or event has been taxed under two inconsistent theories, *Dalm*, 494 U.S. at 605 n. 5, 110 S.Ct. at 1367 n. 5, and is also available to the Government where it is the potentially aggrieved party, *see Stone*, 301 U.S. at 539, 57 S.Ct. at 854. Although often termed a "defense," *see id.*, the doctrine seems to be used most often by taxpayers initiating an action against the United States to recover taxes for a single transaction that have been paid under one theory, for which a right to recovery is time-barred, where the Government then taxes the same transaction under a separate theory, resulting in an unjust enrichment to the Government. Even though the taxpayer normally is barred from bringing a refund action for

the taxes paid under the first theory, the suit is tolerated as a "defense" since "[s]uch a defense is never barred by the statute of limitations so long as the main action itself is timely." *Bull*, 295 U.S. at 262, 55 S.Ct. at 700.

■ Here, the Government has not taxed the same fund or transaction twice. Instead, the Government alleges that it has assessed an additional amount of taxes, interest, and penalties against the Defendants for the tax years in issue. The Formas' crossclaim thus does not meet the traditional requirements of equitable recoupment. *See Dalm*, 494 U.S. at 605 n. 5, 110 S.Ct. at 1367 n. 5. Nevertheless, the equitable principles upon which the doctrine is based apply equally as well here.

In *Freeman v. United States*, 265 F.2d 66 (9th Cir.1959), the plaintiff taxpayer initiated a refund action without having first paid the full amount of his assessment, as mandated by *Flora*. The Government answered and counterclaimed for the full amount of taxes it alleged were owed for the tax year in question. The Government then argued that the plaintiff's claim should be dismissed for lack of jurisdiction and the Government allowed to proceed on its counterclaim.

The court rejected this contention. It first noted that "the right claimed by [the taxpayer] in his complaint and by the government in its counterclaim present precisely the same legal question based upon the identical ... facts." *Id.* at 69. It then proceeded to explain the basic inconsistency in the Government's position:

[I]f we proceed with the counterclaim and the government prevails, this will also be dispositive of [the taxpayer's] refund claim, whether or not his complaint is dismissed. On the other hand, if we proceed with the counterclaim and [the taxpayer] prevails, prior dismissal of his complaint results in this absurdity: he would have to pay the balance of a tax which we have said he does not owe before he could enforce a refund of the amount erroneously withheld.

*Id.; see also Christie v. United States*, 179 F.Supp. 709, 715 (D.Or.1959) (adopting *Freeman* ).

Likewise in *United States v. Lease*, 63–2 U.S.Tax Cas. (CCH) ¶ 9503 (S.D.N.Y.1962), the Government brought a suit to foreclose tax liens based upon assessments of taxes, penalties and interests for the 1943 and 1944 tax years. The defendant asserted a wrongful assessment counterclaim for the two years in question. The Government moved for summary judgment on the counterclaim, asserting that the defendant had failed to comply with the statutory prerequisites for asserting such a claim. Relying on *Bull* and *Electric Storage Battery*, the court refused to grant the Government's motion, noting that it was the Government that brought the action, not the defendant, and that the assessments could be examined in their entirety. 63–2 U.S.Tax Cas. (CCH) at 89,117.

By bringing this action, the Government has placed the tax years at issue before the Court. Thus each transaction, i.e. each tax year, *see Dysart v. United States*, 340 F.2d 624, 627–28, 169 Ct.Cl. 276 (1965), "may 'be examined in all its aspects,' notwithstanding the failure to comply with statutory prerequisites, were the counterclaim the basis of an independent action," *Lease*, 63–2 U.S.Tax Cas. (CCH) at 89,117 (quoting *Electric Storage Battery*, 329 U.S. at 299, 67 S.Ct. at 272), so that a judgment can be rendered "that does justice in view of the ... transaction as a whole." *Electric Storage Battery*, 329 U.S. at 299, 67 S.Ct. at 272; *see Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932); *Dysart*, 340 F.2d at 628; *Freeman*, 265 F.2d at 69.

The assessments at issue here are bitterly contested. The Government has already collected approximately $150,000 from the Formas based upon the contested assessments and sought to reduce the amount not collected to judgment. Although the Government continues to contend that its assessment is entitled to a presumption of correctness, Judge Walker previously found that, here, the presumption not conclusive, *Forma,* slip op. at 8, and nothing

has been submitted to the Court since pointing to an opposite conclusion. Assuming the Formas defeat this presumption fully and prevail, dismissing the counterclaim would leave them in the exact incongruous position discussed in *Freeman.* Furthermore, their claim for a large portion of the moneys collected may very well be time-barred. The Government therefore could retain a significant amount of money to which it is not entitled, a result repugnant to the equitable principles set forth in the line of cases discussed above. *See, e.g., Bull,* 295 U.S. at 261–62, 55 S.Ct. at 700; *Lewis,* 284 U.S. at 283, 52 S.Ct. at 146.

The Government argues that the Formas should not be able to recover the previous payments made on the contested assessments even if the Formas prevail. However, the transactions at issue are indeed the tax years at issue. *See* 15 *Mertens Law of Federal Income Taxation* § 58.91, at 58–144 (1991). By placing the tax years at issue before the Court, the Government opened up the assessments at issue to the Court's jurisdiction, and now may not complain that the relief that may be granted is not what was expected when the suit was first filed. *Accord Bull,* 295 U.S. at 260, 55 S.Ct. at 700 ("If that which the sovereign retains was unjustly taken in violation of its own statute, the withholding is wrongful. Restitution is owed the taxpayer."); *Estate of Vitt v. United States,* 706 F.2d 871, 874 (8th Cir.1983) (upholding affirmative recovery of tax wrongfully held on equitable recoupment grounds). The Government's motion to vacate and dismiss the counterclaim for want of subject matter jurisdiction is therefore denied.

## II. *The Actions of the Special AUSA*

The Government argues that the default judgment is void also because the Special AUSA lacked the authority to compromise its position. *See* Fed.R.Civ.P. 60(b)(4). In doing so, the Government principally relies on *United States v. Beebe,* 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563 (1901), and *Land Mine Enterprises v. Sylvester Builders, Inc.,* 81 Civ. 931, slip op. (S.D.N.Y. July 31, 1985). Both of these cases are distinguishable from the present situation.

In *Beebe,* an attorney for the United States settled without authority a tax matter in favor of a taxpayer. The Supreme Court held that such a settlement could be vacated, not because the judgment was void, *see* 180 U.S. at 350–51, 21 S.Ct. at 374, but because an attorney for any party, private or public, lacks the power to enter into a settlement on a party's behalf without the consent of that party. *Id.* at 351–52, 21 S.Ct. at 374.

Likewise in *Land Mine,* an AUSA entered into a settlement that required the United States to pay out $1,800,000 in return for the dismissal of the claims against it. The settlement was never approved by a Deputy Attorney General, as required by regulation. Slip op. at 1–2. The court vacated the settlement, finding that the AUSA lacked the authority to enter into the settlement and rejecting the argument that the Government should be estopped from denying the acts of its agent. *Id.* at 5–7.

■ Once a tax matter is referred to the Department of Justice, only the Attorney General or a person to whom authority has been delegated by the Attorney General may settle the matter. 26 U.S.C. § 7122. Authority to settle matters of $200,000 or less is delegated to "[t]he Chiefs of the Civil Trial, the Claims Court Section and the Office of Special Litigation," 28 C.F.R. pt. O, subpt. Y, app., tax div. direct. 82, § 2, while the authority to settle higher amounts is delegated to the Chief of the Office of Review and the Deputy Assistant Attorney Generals, *id.* §§ 6, 7. The Government asserts that the Special AUSA lacked authority to settle the matter and therefore lacked authority to consent to the entry of the default judgment.

■ Here, however, there was no settlement. It appears that all efforts at arriving at a settlement failed and that the Formas reinstated their claim to protect their interests. Only when the Government failed to respond was a default judgment entered. That the Special AUSA stated the Government would not oppose the default does not establish that the par-

ties entered into a settlement. Furthermore, it appears from the record that others within the United States Attorney's Office and the Internal Revenue Service were aware of the status of the case. The Special AUSA's actions were part and parcel of his activities in defending against the counterclaim; as such, the Government is bound by them. *See Heim v. Commissioner*, 872 F.2d 245, 247–48 (8th Cir.1989); *A. Duda & Sons Cooperative Ass'n v. United States*, 504 F.2d 970, 975–76 (5th Cir.1974).

Additionally, the Court in *Beebe* did not state that settlements entered into without authority were void *per se*. It only stated that an action could be brought to set aside such a settlement. *See* 180 U.S. at 351, 21 S.Ct. at 374. The Government needs to find some other provision of Rule 60(b) to rely on besides the fourth in arguing for the judgment to be set aside.

### III. *Mistake, Inadvertence, Surprise or Excusable Neglect*

■ Under Rule 60(b)(1), a judgment may be vacated for "mistake, inadvertence, surprise, or excusable neglect." Fed. R.Civ.P. 60(b)(1). There are three requirements to consider when deciding whether to set aside the entry of a default: (1) whether the default was wilful; (2) whether the moving party has presented a meritorious defense; and (3) whether the opposing party would be prejudiced. *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir.1983); *Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. 535, 539 (S.D.N.Y.1985); *cf. Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir.1984) (applying these factors to Rule 55(c)'s "good cause" provision).

■ Here, the Government did not oppose the entry of judgment, and its actions through the end of September 1991 indicate that this was a wilful act. Litigation of the matter had proceeded to an advanced stage. Motion practice was essentially complete and the case placed on the Court's Ready Trial Calendar. By motion of the parties, it was taken off that calendar and restored to active status only after the Formas made an unopposed motion. There appears to have been much deliberation by the Government over the course of the summer of 1991, but no substantive opposition to the default entered until September. The lack of opposition therefore appears to have been wilful.

Secondly, the Government has failed to indicate that it has a meritorious defense. The Government's principal defense is that the Court lacked subject matter jurisdiction over the counterclaim. This argument was rejected above. *See supra*. Another is that the Special AUSA lacked the authority to compromise the Government's position. This too was rejected. *See supra*. The Government also suggests that it "could demonstrate that the assessments were in fact properly made," and that "the Court has already considered the evidence put forth by the defendants on this issue and denied them summary judgment." Memorandum of Law 26 (Oct. 7, 1991); *see also* Reply Memorandum 23 (Nov. 26, 1991). This does not accord with Judge Walker's prior opinion in this matter. Judge Walker in fact denied the Formas' motion to dismiss on the pleadings. *See Forma*, slip op. at 5. As to the Government's summary judgment motion, Judge Walker expressed serious doubt about the Government's ability to ultimately prevail in this action in denying its motion, and the Government has not presented anything since then disproving this notion. *See id.* at 8–9.

Finally, it should be noted that the Formas have expended much energy in attempting to end this litigation. Vacating the judgment would seriously prejudice their efforts over the course of the past year. *See Marziliano*, 728 F.2d at 157.[3] Relief pursuant to Rule 60(b)(1) is not warranted.

*Davis* is distinguishable. There, the Second Circuit stated that "it has never hesitated to reverse the denial of a motion to vacate a default judgment where further factfinding was necessary to ensure that substantial justice was served." 713 F.2d

---

**3.** Even if Rule 55(c)'s less rigorous standard were applied, the Court, in its discretion, would still reject the Government's motion. *See Marziliano*, 728 F.2d at 156.

at 916. Because the Government's motion for a hearing pursuant to Rule 55(e) is granted, *see infra*, and because the Government's claim was dismissed without prejudice, it is likely that the hearing on damages will be dispositive of all the claims at issue and provide the requisite factfinding to ensure that justice is served.

Nor does the Special AUSA's conduct rise to a level mandating vacatur under Rule 60(b)(6). In general, "neither ignorance nor carelessness on the part of an attorney will provide grounds for Rule 60(b) relief." *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1207 (7th Cir.1984); *United States v. Thompson*, 438 F.2d 254, 256 (8th Cir. 1971); *cf. Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). Even if an attorney's conduct can be characterized as "grossly negligent," such relief is not proper. *See Heim*, 872 F.2d at 248. Relief pursuant to Rule 60(b)(6) is not warranted.

### IV. *Rule 55(e)*

█ Rule 55(e) requires a party to establish its claim against the Government by satisfactory evidence. Fed.R.Civ.P. 55(e); *see Marziliano*, 728 F.2d 151. "The Rule rests on the rationale that the taxpayers at large should not be subjected to the cost of a judgment entered as a penalty against a government official which comes as a windfall to the individual litigant." *Campbell v. Eastland*, 307 F.2d 478, 491 (5th Cir. 1962); *accord Marziliano*, 728 F.2d at 157–58. Although a hearing on the matter is preferred, one is not necessary if there is an adequate basis in the record for awarding the default. *Id.* at 158.

█ The Formas seek an award for the taxes they have paid to satisfy allegedly false assessments for the 1977, 1978, and 1982 tax years and for the damages allegedly suffered in the sale of their house. Whether the assessments were improper has not been factually established, and whether the Formas are entitled to damages from the sale of the house is a matter of contention that need not be resolved at this juncture. Rather, a hearing should be held to determine whether the Formas are entitled to the damages sought.

The Court erred in failing to schedule this hearing, even though the provisions of Rule 55(e) were not pointed out nor was a hearing pursuant to the rule requested by the Government. Therefore, pursuant to Rule 60(a), the default judgment is vacated for the limited purpose of holding a hearing pursuant to Rule 55(e).

### *Conclusion*

For the reasons set forth above, the Government's motion to vacate the default judgment entered against it pursuant to Rules 55 and 60(b) is denied. The judgment is vacated pursuant to Rule 60(a) for the limited purpose of holding a hearing pursuant to Rule 55(e).

It is so ordered.