Walter F. FREEMAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15981.

United States Court of Appeals Ninth Circuit.

March 26, 1959.

Philip Crittenden, Crittenden & Gibbs, San Diego, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, S. Carter Bledsoe, Grant W. Wiprud, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Edward R. Mc-Hale, Rembert T. Brown, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY, and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge.

Asserting that the United States Navy had erroneously withheld taxes from his retirement pay, plaintiff instituted this suit for a refund. The action was brought under 28 U.S.C.A. § 1346(a) (1) and the amount sought to be recovered was $22.10. The United States answered with a general denial and a counterclaim to recover $256.90 for unpaid taxes. Judgment was entered for the government and plaintiff appeals.

Two questions are presented for our consideration. The first is whether appellant can maintain such a refund suit, having failed to allege that he had paid all of the claimed tax for the year in question. The second is whether, under the facts of this case, the retirement pay upon which the tax was computed was exempt from taxation as pay received for sickness resulting from active service in the armed forces, within the meaning of § 22(b) (5) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(b) (5).

The facts necessary to be considered in determining these questions are not in dispute. Appellant, Walter F. Freeman, was an enlisted man in the United States Navy from May 6, 1918, to June 26, 1939, He was then released from active duty and transferred to the Fleet Reserve. The transfer was based on length of service. Freeman thereafter requested that he be recalled to active duty, and on September 11, 1939, this request was granted. At this time he was given a physical examination and was found to be physically fit for all duty. He was then assigned to active shore duty in the San Diego, California, area.

A Navy physical examination to which Freeman submitted on January 5, 1943, disclosed that he had the following defects: (1) Arteriosclerosis, general No. 210; (2) vision 10/20 left, 16/20 right, corrected to 20/20 in each eye by glasses; and (3) varicose veins, legs and feet No. 249. The medical examiner reported that Freeman was "not fit to perform active duty at sea or on foreign service," and was "not physically qualified for any duty." This report was approved by the Chief of the Bureau of Medicine and Surgery, who recommended that Freeman be released from active duty and placed on the retired list.

In accord with this recommendation the Chief of Naval Personnel, on February 6, 1943, directed that Freeman be released from active duty. It was further ordered that he be placed on the retired list on the first day of the month following his release from active duty, under authority of the Naval Reserve Act of 1938, 34 U.S.C.A. § 854b, 854e.* Pursuant to this direction, Freeman was released from active duty on February 18, 1943. He was placed on the retired list as of March 1, 1943. His retirement pay was computed on the basis of length of service only.

After the adoption of the Career Compensation Act of 1949,[1] Freeman was advised by the Navy that under §§ 402(d), 402(h), and 411,[2] he had a choice of methods for computing retirement pay under the provisions of that act. He was also informed that the Physical Review Council of the Bureau of Personnel had assigned him a percentage of disability of zero for purposes of computing retirement pay under the statutory options.

Freeman first elected option "(b)" of § 511 of the 1949 act, 37 U.S.C.A. § 311. Under this option compensation is computed on the basis of a formula established by the Career Compensation Act of 1949. Subsequently he changed his election to option "(a)" of § 311. Compensation under this option, effective as of October 1, 1949, is based on the laws in effect prior to October 11, 1949. As a result of this latter selection, all retirement pay received by Freeman since October 1, 1949, has been based on the laws in effect prior to that date. This retirement pay is based on over twenty-four years of service, and no portion of it is computed on the basis of a disability factor.

On February 14, 1956, Freeman filed an application with the Board for Correction of Naval Records, Department of the Navy, for the purpose of correcting the percentage of disability assigned to him. On August 14, 1956, the board denied a hearing on this application. This action was taken on the ground that Freeman's medical records did not indicate that at the time of retirement on March 1, 1943, he was suffering from a disability ratable under the schedule for rating disabilities in current use by the Veterans Administration.

From the time of his retirement until the year 1952, Freeman reported his retirement pay as exempt from income tax and has paid no income tax thereon. This course was not challenged by the Internal Revenue Service until the present controversy arose. On or about March 15, 1953, Freeman filed his income tax return for 1952 on Form 1040A. Under § 51(f) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 51(f), he was not required to show on this return the tax due for 1952.

■ In 1952 for the first time the Navy withheld sums from his retirement pay for taxes, the total amount withheld for the year being $22.10. On March 22, 1953, following the procedure specified in § 51(f), the Commissioner of Internal Revenue assessed Freeman's 1952 income tax at $279. Notice of this assessment together with demand for payment, less the $22.10 withheld, was made upon Freeman.

Freeman did not pay the sum demanded, but instead filed a claim for the amount withheld. His claim was denied, whereupon Freeman instituted this action on October 11, 1954, without first paying the full amount of tax assessed for 1952. As before indicated, the government then counterclaimed to recover the amount of taxes claimed to be owing for 1952.

We turn first to the question of whether Freeman can maintain this refund suit, having failed to allege that he had

---

* Now 10 U.S.C.A. §§ 6330, 6331, 6485.

1. 63 Stat. 802 et seq., 37 U.S.C.A. § 231 et seq.

2. 37 U.S.C.A. §§ 272(d), 272(h), 281—all repealed on August 10, 1956, c. 1041, § 53, 70A Stat. 641.

paid the full amount of income tax assessed against him for 1952. Arguing that under these circumstances Freeman's complaint must be dismissed, the government cites Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165.[3]

In Flora it was held that a taxpayer must pay the full amount of an income tax deficiency assessed by the Commissioner of Internal Revenue before he may challenge its correctness by a suit in a federal district court for a refund under 28 U.S.C.A. § 1346(a) (1). Appellant argues that our case is to be distinguished from Flora because there has been no deficiency assessment here and, unlike Flora, Freeman does not seek refund of a part payment of a deficiency assessment.

In view of the counterclaim which has been interposed, this suit no longer involves only the right of the taxpayer to such a refund. It also involves the right of the government to recover the claimed balance of the assessed tax for 1952. Moreover, the right claimed by Freeman in his complaint and by the government in its counterclaim present precisely the same legal question based upon the identical and uncontroverted facts. That question is whether the retirement pay which Freeman received in 1952 was of a kind which is exempt from taxation.

While the government wishes us to dismiss the complaint, it wants to proceed with the counterclaim.[4] The latter request is a proper one, since the counterclaim has an independent basis in § 7401 of the Internal Revenue Code of 1954, 26 U.S.C.A., and 28 U.S.C.A. § 1345.[5] But if we proceed with the counterclaim and the government prevails, this will also be dispositive of Freeman's refund claim, whether or not his complaint is dismissed. On the other hand, if we proceed with the counterclaim and Freeman prevails, prior dismissal of his complaint results in this absurdity: he would have to pay the balance of a tax which we have said he does not owe before he could enforce a refund of the amount erroneously withheld.

We therefore conclude that regardless of whether Freeman's complaint, if it stood alone, would be vulnerable under the Flora rule, the presence of a counterclaim involving precisely the same issues, which the government desires to press, makes application of that rule inappropriate here.

This brings us to the second question noted at the outset of this opinion. Restating it: Under the facts of this case, was the retirement pay received by Freeman from the Navy during 1952 " * * * a pension * * * for * * * sickness resulting from active service in the armed forces * * ," and therefore exempt from taxation under § 22(b) (5) of the Internal Revenue Code of 1939?[6]

---

3. While the government presents this issue as if it involves a question of jurisdiction, we think it is a question of whether the complaint states a claim upon which relief can be granted, within the meaning of Rule 12, Federal Rules of Civil Procedure, 28 U.S.C.A. The issue was so considered in the Flora case.

4. In Flora the government, apparently content with the deficiency assessment, did not contend that its judgment upon the counterclaim should be sustained independently. Hence, in that case the cause was remanded with directions to vacate the judgment of the government upon its counterclaim and to dismiss the action without prejudice. See Flora v. United States, 10 Cir., 246 F.2d 929, affirmed 357 U.S. 63, 78 S.Ct. 1079, 2 L. Ed.2d 1165.

5. On the general proposition that a counterclaim under which affirmative relief is sought is sustainable without regard to what happens to the original complaint, see Switzer Brothers, Inc. v. Chicago Cardboard Co., 7 Cir., 252 F.2d 407; Isenberg v. Biddle, 75 U.S.App.D.C. 100, 125 F.2d 741.

6. Section 22(b) (5) reads as follows:
"(b) *Exclusions from gross income.* The following items shall not be included in gross income and shall be exempt from taxation under this chapter:
    *    *    *    *    *
"(5) *Compensation for injuries or sickness.* Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 23(x) in any prior taxable year, amounts received through accident or health insurance or

In 1939, while in good health, Freeman was released from active duty and transferred to the Fleet Reserve.[7] This did not place him in a retired status, however, since at that time enlisted men in the Navy could be retired for length of service only after serving thirty years.[8] Freeman had then served only a little over twenty-one years.

Freeman was recalled to active duty on September 11, 1939, at a time when he was still in good health. But on January 5, 1943, he was found to have arteriosclerosis, defective vision, and varicose veins. The medical examiner found that Freeman was not physically qualified for any active duty. The Chief of the Bureau of Medicine and Surgery recommended that Freeman be released from active duty and placed on the retired list. An order carrying out this recommendation was issued by the Chief of Naval Personnel.

As before noted, Freeman was not then eligible for retirement for length of service, since he had not served for thirty years. The order placing him in retirement, however, cites the Naval Reserve Act of 1938 as authority for placing Freeman on the retired list. The only provision of that act which could apply in Freeman's case is § 206.[9] This section provides that enlisted men transferred to the Fleet Reserve after sixteen years' or more service in the Regular Navy, who are found to be not physically qualified, shall be transferred to the retired list of the Regular Navy with the pay they are then receiving.

It is therefore apparent that Freeman was not only released from active duty during wartime solely because of physical disability, but that the only legal basis for then placing him on the retired list was that he was not physically qualified for active duty.

Since Freeman had enlisted in the Regular Navy prior to July 1, 1925, and had more than twenty years' naval service, his Fleet Reserve pay had been at the rate of one half of his base pay.[10] When he was transferred from the Fleet Reserve to the retired list on March 1, 1943, because of physical disqualification, he continued to receive the same pay.[11]

The pay received by one who is in the Fleet Reserve, or who has been transferred to the retired list from the Fleet Reserve, is referred to in the Naval Reserve Act of 1938 as "retainer or retired" pay.[12] In this respect the statute authorizing such pay makes no differentiation between one who has been transferred to the Fleet Reserve for length of service, one who has been retired for length of service, or one who has been transferred from the Fleet Reserve to the retired list for physical disqualification.

In our view, however, the question of whether pay received after retirement is a "pension * * * for * * * sickness," within the meaning of § 22(b) (5) of the Internal Revenue Code of 1939,

---

under workmen's compensation acts, as compensation for personal injuries or sickness, plus the amount of any damages received whether by suit or agreement on account of such injuries or sickness, and amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country."

7. This was done pursuant to 34 U.S.C.A. § 854b. Under this section men serving in the Regular Navy and who had enlisted therein on or before July 1, 1925, are entitled to be so transferred upon the completion of sixteen or more years' naval service.

8. Act of March 3, 1899, c. 413, § 17, 30 Stat. 1008, as amended by Act of March 2, 1907, c. 2515, § 1, 34 Stat. 1217, 34 U.S.C.A. § 431, repealed by Act of August 10, 1956, c. 1041, § 53, 70A Stat. 641, now 10 U.S.C.A. § 6326.

9. 34 U.S.C.A. § 854e, repealed by Act of August 10, 1956, c. 1041, § 53, 70A Stat. 641.

10. 34 U.S.C.A. § 854b.

11. See footnote 9.

12. 34 U.S.C.A. § 854g.

cannot be resolved by resort to such statutory designations. The answer, we believe, depends on the status of the recipient at the time of release from active duty. See Palluconi v. United States, 143 F.Supp. 572, 574, 136 Ct.Cl. 190. Since Freeman's status after March 1, 1943, was that of one retired because of physical disqualification due to sickness which was incurred during active service, we think the pay he then begain receiving must be regarded as a pension for "disability" or "sickness."

The view just expressed finds support in closely analogous cases.

Neill v. Commissioner of Internal Revenue, 17 T.C. 1015, concerned a Baltimore policeman who had been retired after he was found to be incapacitated for service. The local law of Baltimore, pursuant to which he received retirement pay, empowered the police commissioner to retire a policeman who had served faithfully not less than sixteen years or who had been permanently disabled in the discharge of his duties. Neill did not list his retirement pay as taxable income and challenged in the Tax Court a deficiency assessment based on this income.

In setting aside the assessment the Tax Court first pointed out that the fact that Neill was incapacitated at the time of retirement was not sufficient to bring the exemption into play if he was actually retired for length of service rather than for disability. After an examination of the record, the court concluded that Neill was actually retired for disability and not for length of service. "In the circumstances," the court said, "we hold that his retirement pay was exempt under section 22(b) (5)."

It will be noted that the Neill case is similar to ours in two significant respects. In neither does the governing statute refer to "disability" or "sickness" pay, but lumps all pay received after retirement, for whatever cause, under a term such as "retired" or "retirement" pay. In both cases the amount of retirement pay is the same, whether retirement was for disability or for length of service.

In another respect the instant case is stronger for the taxpayer than was Neill. In Neill the taxpayer was eligible for retirement either for disability or length of service. But in our case Freeman was eligible for retirement in 1943 only because of physical disqualification due to sickness which was incurred during active service.

Prince v. United States, 119 F.Supp. 421, 127 Ct.Cl. 612, was a suit to recover income taxes paid on retirement income alleged to have been exempt under § 22 (b) (5). Colonel Prince served as an officer in the United States Army from 1908 to July 31, 1943. On July 25, 1943, he had reached the age of sixty years and was eligible for retirement for length of service under the applicable statute. Retirement, therefore, was for length of service.

On the day after his retirement, Prince was recalled to active duty. On November 4, 1943, an Army Retiring Board found that he was incapacitated for active service. His incapacity consisted of arteriosclerosis, hypertension, and deafness. All of these disabilities, according to the board, had originated several years prior to his retirement in 1943, and were permanent. On the basis of these findings Prince was released from active duty and he again began receiving retirement pay.

In view of his physical condition on the date of original retirement, and under applicable statutes, Prince could have retired initially for disability rather than length of service, though the amount of retirement pay would have been the same. The Court of Claims therefore held, in ruling in favor of the taxpayer, that it would "treat the situation as i:. the form were in accord with the facts and the justice of the case, and award the plaintiff the corresponding rights."

Like Neill, Prince is similar to our case in that the applicable statute did not refer to "disability" or "sickness" pay, but provided simply that an inca-

pacitated officer would be placed on the "retired list." [13] Likewise, as in Neill and our case, the disability pay to which Prince was entitled was identical with the retirement pay based on length of service. Again, as in Neill, Prince was eligible for his initial retirement either on the basis of disability or length of service. As before noted, Freeman was eligible for retirement only on the basis of disability because of sickness which was incurred during active service, a circumstance which makes the instant case a stronger one for the taxpayer.

In McNair v. Commissioner of Internal Revenue, 4 Cir., 250 F.2d 147, the taxpayer, a retired Navy captain, sought a review of a Tax Court decision which denied him tax exempt status. The Tax Court had sustained the commissioner's determination that his retirement pay was received on account of age and service, and not because of disability.

McNair served in the Navy from 1899 to 1931, when he was retired for age and service. In April 1941, he was recalled to active duty. The following year, while engaged in active service, McNair contracted tuberculosis which resulted in total and permanent disability. A Navy Board of Medical Survey recommended that McNair be ordered to appear before a Naval Retiring Board.

The Bureau of Naval Personnel did not follow this course, but retired McNair for thirty years' service. In a letter thereafter sent to McNair, the Chief of Naval Personnel explained why this action was taken. He expressed the view that under the applicable statute McNair's retirement could be based on disability only if McNair was "not otherwise entitled" to the amount of retirement pay this would give him. Since he was already entitled to the same amount of retirement pay based on length of service, it was thought that the condition expressed in the quoted words could not be met.

But the Chief of Naval Personnel then went on to state in the same letter that McNair would nevertheless be entitled to tax exemption under § 22(b) (5) of the Internal Revenue Code of 1939. He likened McNair's position to that of an enlisted man who had been transferred from the Fleet Reserve to the retired list because of physical disqualification—exactly what happened to Freeman in the instant case.[14] McNair also received a letter from the disbursing officer at Annapolis in which a similar view was stated concerning tax exemption.[15]

Holding in favor of the taxpayer, the Court of Appeals in McNair expressed approval of Prince v. United States, supra, but placed its decision upon this somewhat different ground [250 F.2d 150]:

"* * * where a fair construction is given to the act granting the exemption in connection with the acts dealing with disability compensation, the pay allowance drawn by Captain McNair when he was separated from the active service on account of disability falls within the exemption * * *."

13. 10 U.S.C.A. § 933, repealed October 12, 1949, c. 681, Title V, § 531(b), and is now found in substance in 37 U.S.C.A. § 271 et seq.

14. In this connection the letter in question reads:

"'3. Having been released to inactive duty for permanently incapacitating disability incurred in line of duty and under conditions in which the Naval Retiring Board is without jurisdiction to consider your case, your case is analogous to that of a member of the Fleet Reserve who is transferred to the enlisted retired list pursuant to the recommendation of a Board of Medical Survey. It is there-

fore believed that your retired pay subsequent to your release from active duty on 1 November 1942 is exempt from Federal tax in accordance with the amended provisions of Section 22(b) (5) of the Internal Revenue Code.'"

15. Commenting on these two letters, the Court of Appeals said:

"* * * The reasonable view of these officers was that the case of an officer on the retired list who had been recalled to active duty and afterwards released to his retired status on account of disability was not to be distinguished from the case of such an officer retired for disability."

It will be observed that McNair bears all the similarities and dissimilarities to the case before us as have been pointed out with respect to the Neill and Prince cases. In addition, there is in McNair tacit approval of the view of the Chief of Naval Personnel that an enlisted man transferred from the Fleet Reserve to the retired list for physical disqualification thereafter receives disability pay which is tax exempt under § 22(b) (5).

The government seeks to distinguish the Prince and McNair cases from the one before us on the ground that in those cases the service agencies had determined that the taxpayer could have been retired for disability, while here the Navy has specifically determined to the contrary.

As indicated earlier in this opinion, the Navy did determine at the time of Freeman's retirement in 1943 that he was entitled to retire because of physical disqualification due to sickness which was incurred during active service. Had it not been for that determination, Freeman could not have transferred from the Fleet Reserve to the retired list at that time.

It is true, however, that more than seven years later there was agency action by the Navy which seems to backtrack on that determination. On October 16, 1950, the Navy's Physical Review Council assigned Freeman a disability rating of zero as of his retirement on March 1, 1943. This action was taken pursuant to the provisions of the Career Compensation Act of 1949.[16] As previously noted in this opinion, Freeman had thereafter sought a correction of this determination, but this was denied on August 14, 1956.[17] The government relies upon these two agency actions as representing a specific determination that Freeman was not entitled to retirement for disability.

We do not believe that this is a correct characterization of these agency actions. As heretofore indicated, Freeman had been released from active duty solely because of physical disability, and he could not have been placed on the retired list at that time except for physical disqualification which, in his case, resulted from sickness which was incurred during active service.

Moreover, the letter of December 6, 1950, which Freeman received from the Navy's Bureau of Personnel advising him of his options under the Career Compensation Act of 1949, cites as the applicable statute a section of that act which pertains only to persons theretofore retired for physical disability.[18] In addition, the report of the Chief of the Bureau of Medicine and Surgery dated July 24, 1956, on the basis of which the Board for Correction of Naval Records declined to change Freeman's disability

16. Section 411, 37 U.S.C.A. § 281, repealed by Act of August 10, 1956, c. 1041, § 53, 70A Stat. 641.

17. The denial was based on a report dated July 24, 1956, which the Board for Correction of Naval Records received from the Chief of the Bureau of Medicine and Surgery. The pertinent portion of this report reads as follows:

"5. A review of petitioner's medical records reveals that prior to his retirement on 1 March, 1943, there was no evidence of renal, cardiac, or cerebral complications as the result of his generalized arteriosclerosis. There was, however, evidence of generalized arteriosclerosis in the lower extremities. The symptoms and physical findings were not of such character as to be ratable under the Schedule for Rating Disabilities in current use by the Veterans Administration. Petitioner's defective vision was slight and was correctable to 20/20. Petitioner presented mild asymptomatic varicosities of the superficial veins of the lower legs and feet.

"6. From a review of petitioner's medical records it is the opinion of this Bureau that the disability rating of 0% assigned by the Physical Review Council was correct and proper and that petitioner's medical records do not indicate that he was suffering from a disability ratable under the Schedule for Rating Disabilities in current use by the Veterans Administration at the time of his retirement on 1 March, 1943."

18. See footnote 16.

rating, explicitly states that Freeman had been "placed on the retired list by reason of physical disability on 1 March, 1943."

The mystery of how the Physical Review Council and the Board for Correction of Naval Records could have determined in the face of these facts that Freeman's physical disability rating on March 1, 1943, should be zero is not solved in the record or briefs before us. Under somewhat similar circumstances the Court of Claims in the Prince case declined to follow the determination of the Army Board of Correction of Military Records. It was held that such determination "must have been based upon an unduly rigid adherence to form" and that the board and the Secretary of the Army "did not make use of their expressly granted authority 'to remove an injustice.'"

■ But it is not necessary for us to fathom this seeming enigma. At least with regard to persons theretofore retired for disability, the physical disability ratings given under the 1949 act were not intended to affect retired-for-disability status or the right to receive pay based on such disability. Rather, they were given only to provide a basis for computing one of three kinds of retirement pay authorized by the act.

Under 37 U.S.C.A. § 281, now repealed, a person theretofore retired by reason of physical disability was given elections designated "A" and "B". Under "A" he received "disability retirement" pay under that chapter, depending upon his qualifications. One of these qualifications was that he have a disability of thirty per centum or more.[19] It was in connection with this "A" option, and for no other purpose, that disability ratings were made. Since Freeman was given a zero rating he was not eligible to elect "A" as the method of computing his retirement pay.

Under the election designated "B" he was given the choice of having his pay computed by one or the other of two methods described in 37 U.S.C.A. § 311. Under one of these methods designated as "(a)," monthly retirement pay would be in the same amount as authorized by provisions of law in effect immediately prior to the enactment of the Career Compensation Act of 1949. Under the other method therein referred to as "(b)," monthly retirement pay would be equivalent to two and a half per cent of the monthly basic pay of the highest rank held multiplied by the number of years of active service.

As before indicated, Freeman first chose the "(b)" method, but later changed to the "(a)" method. As a result, after enactment of the 1949 act he continued to receive retirement pay at the same rate as he had previously been receiving it. Since he did not choose the "A" option of § 281 (and indeed could not because of the zero rating), the zero rating given him on October 16, 1950, which pertained only to that option, has no bearing on the present problem.

■ We have not overlooked the fact that 37 U.S.C.A. § 281, refers to the "A" option, which Freeman did not elect, as "disability retirement pay" and the "B" option, which he did elect, as "retired pay or retirement pay." As we have already stated, however, the statutory terms used in referring to various methods of computing retirement pay are not controlling. Since 37 U.S.C.A. § 281, applies only to persons theretofore retired by reason of physical disability, all retirement pay therein described is to be considered, for tax purposes, as pay for disability retirement.

Direct reference to tax exemptions under § 22(b) (5) of the Internal Reve-

19. 37 U.S.C.A. § 272, repealed August 10, 1956, c. 1041, § 53, 70A Stat. 641.

nue Code of 1939 is made in § 402(h) of the 1949 act.[20] Both appellant and appellee, however, are in agreement that this section is not applicable here in view of the choice made by Freeman as to the method of computing retirement pay. Their view is confirmed by a ruling of the Internal Revenue Service.[21]

For the tax exemption provided by § 22(b) (5) of the Internal Revenue Code of 1939 to apply, the injuries or sickness for which disability pay is given must have resulted "from active service in the armed forces of any country." The government, however, makes no contention that if Freeman is otherwise entitled to the exemption the same should be denied on the ground that his sickness did not result from active service.

In any event such a contention would be without merit inasmuch as the uncontroverted facts show that Freeman's sickness developed while he was in active service. This is all the showing that is required. In this respect the facts of this case are strikingly similar to those of Prince v. United States, supra. In that case the incapacity, which developed during Prince's active service, consisted of arteriosclerosis, hypertension, and deafness. Freeman's physical disability consisted of arteriosclerosis, defective vision, and varicose veins.[22]

The judgment is reversed and the cause is remanded for entry of a judgment for appellant on the complaint and counterclaim.

---

**20.** 37 U.S.C.A. § 272(h), repealed August 10, 1956, c. 1041, § 53, 70A Stat. 641. This subsection reads as follows:

"(h) That part of the disability retirement pay computed on the basis of years of active service which is in excess of the disability retirement pay that a member would receive if such disability pay were computed on the basis of percentage of disability shall not be deemed to be a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country within the meaning of section 22(b) (5) of Title 26."

**21.** Rev.Rul. 55–88, 1955–1 Cum.Bull. 241, 243, 4 Prentice-Hall, Federal Taxes (1955), par. 76,760, page 76,433.

**22.** Compare § 402(a) of the Career Compensation Act of 1949, 37 U.S.C.A. § 272 (a), now repealed, the last provision of which reads:

"*Provided further,* That any disability shown to have been incurred in line of duty during a period of active service in time of war or national emergency shall be considered to be the proximate result of the performance of active duty."