**UNITED STATES of America, Appellant,**

v.

**John & Patricia FORMA, Appellees.**

**Nos. 93–6234, 94–6078.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 19, 1994.

Decided Dec. 19, 1994.

Gabriel W. Gorenstein, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., Steven M. Haber, Asst. U.S. Atty., on the brief), for appellant.

Anthony M. Collura, New York City (Ronald A. Balzano, Silverman, Collura & Chernis, on the brief), for appellees.

Before: PRATT, LEVAL and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

This case presents a modest question: Is tax different? It is well-established that, while a counterclaim by a defendant in response to an original action brought by the Government may be used to set off and thus partially or totally to defeat a recovery by the Government, it cannot support an affirmative recovery on the claim by the defendant unless there is an independent basis for jurisdiction. The defendants here, neverthe-

less, contend that they should be able to obtain an affirmative recovery from the Government on their counterclaim despite their conceded failure to meet jurisdictional requirements that would permit an independent action. They make this claim, it would seem, because they believe that tax is different. We acknowledge that tax is different, but not in ways that would avail them in this case.

In an action brought by the Government in the United States District Court for the Southern District of New York (Robert W. Sweet, Judge) to recover tax deficiencies, the defendants John and Patricia Forma won a judgment against the Government of $124,324 on their counterclaim. The Government appeals, contending primarily that, to the extent the counterclaim sought an affirmative award (as opposed to a set off reducing any award to the Government on its original claims), the District Court lacked subject matter jurisdiction. We agree, and we therefore vacate the judgments entered against the Government.

## BACKGROUND

This dispute dates back to the early 1980s when the Internal Revenue Service ("IRS") determined that John and Patricia Forma had failed to pay certain income taxes for the 1977 and 1978 tax years. Accordingly, the IRS made four assessments against the Formas totalling nearly $250,000.[1]

In the six-year statutory administrative collection period which followed, see 26 U.S.C. § 6502(a)(1) (1988),[2] the IRS collected nearly $150,000 of the $250,000 assessed. During this period, the Formas apparently made no claim that they did not owe the taxes assessed against them. Specifically,

the Formas neither contested the assessments in the Tax Court, nor did they opt to pay the assessed taxes in full and then file an administrative refund claim with the IRS or an independent refund suit in the District Court.

In September 1988, having been unable to collect the full amount of the assessed taxes through administrative efforts, the Government filed this action against the Formas in the District Court and sought to reduce the four assessments to judgment. In the course of discovery, the Formas uncovered what appeared to be procedural irregularities in the assessments. According to the Formas, these alleged procedural irregularities—the failure to record the assessments against John Forma and the failure to send deficiency notices—rendered the assessments invalid and unenforceable. On this basis, the Formas moved to dismiss the Government's action. The Government cross-moved for summary judgment, asserting that all four assessments had been properly recorded and that John Forma had waived the deficiency-notice requirement by executing an IRS Form 870 for each assessment. In November 1989, the District Court ruled that factual disputes over whether John Forma had executed waivers for each assessment precluded the entry of judgment for either party at that time.[3]

Subsequently, in October 1990, the Formas filed an amended answer, which included a counterclaim seeking a return of the nearly $150,000 the Government had already collected on the disputed assessments.[4] Thereafter, the Special Assistant United States Attorney ("SAUSA") who was handling this case for the Government, apparently discouraged by his inability to obtain documents from the IRS that he considered necessary,

1. The Formas also owed monies—overdue interest—for the 1982 tax year, for which a further assessment was made.

2. In 1990, the administrative collection period was expanded to ten years. See 26 U.S.C.A. § 6502(a)(1) (West Supp.1994).

3. The Government had produced certified IRS computer transcripts of the Formas' account which indicated that John Forma had executed a waiver for each of the four disputed assessments. However, John Forma had denied executing

such waivers. The District Court held that, though the law presumes IRS transcripts to be accurate, John Forma's denials created a genuine issue of material fact over whether the waivers were in fact executed.

4. The counterclaim sought an additional recovery on the theory that the Government "forced" the sale of the Formas' house at well below its fair-market value. This claim was ultimately rejected on the merits, and no appeal was taken.

agreed with the Formas to a dismissal of all claims without prejudice, subject to reinstatement by either party.

After some delay, the Formas moved to reinstate their counterclaim. The SAUSA did not oppose the Formas' motion, nor did he seek to reinstate the Government's original claim. Moreover, after the District Court approved the reinstatement of the Formas' counterclaim, the SAUSA failed to file a timely response. The Formas then sought a default judgment against the Government, which the SAUSA apparently did not oppose. As a result, in June of 1991, the District Court entered a judgment formally dismissing with prejudice the Government's main suit and granting the Formas a default award against the Government for $158,-262.90 plus interest.[5] According to the District Court, this represented a "refund to [the Formas of] the sum of all amounts collected from them in furtherance of the disputed assessments." Judgment of District Court at 3, *United States v. Forma*, No. 88 Civ. 6458 (S.D.N.Y. June 4, 1991).

Three months later, the Government informed the Formas and the District Court that the SAUSA's actions, which had led to the default judgment against the Government, had been completely unauthorized. The Government then moved in the District Court to have the default judgment vacated under Rules 60 and 55 of the Federal Rules of Civil Procedure, arguing that (1) the Court lacked subject matter jurisdiction over the Formas' counterclaim, and (2) the Formas had not adequately demonstrated a "claim or right to relief" on the merits, which Rule 55(e) requires before the entry of a default judgment against the Government.

On February 26, 1992, the District Court rejected the Government's jurisdictional claim. *See United States v. Forma*, 784 F.Supp. 1132 (S.D.N.Y.1992). The Court recognized that the Formas had not satisfied the statutory prerequisites for filing an independent refund action, but nevertheless concluded that, under principles of equity, it had jurisdiction to examine all parts of the entire transaction/tax year that the Government had placed at issue in its original suit. *See* 784 F.Supp. at 1137–39. The District Court conceded that there should have been a hearing pursuant to Rule 55(e) prior to the entry of a default judgment against the Government. And, accordingly, it vacated the judgment to allow for such a hearing.

At the Rule 55(e) hearing in October 1992, the Formas pressed their claims as to the invalidity of the IRS's four assessments for the 1977 and 1978 tax years. The District Court ruled that the assessments had all been properly recorded, but also found, with respect to two of the assessments, that the Government had demonstrated neither the sending of a deficiency notice nor the execution of a waiver. Over the Government's claims that other statutory provisions and case law would further limit the Formas' recovery, the District Court entered a final judgment of $124,324 (plus interest) on the Formas' counterclaim. This was the sum total of the two assessments that the Court had found to be invalid.

## DISCUSSION

■ As the District Court recognized, if there was no subject matter jurisdiction over the Formas' counterclaim, then the default judgment entered against the Government is void and must be vacated, *see* Fed.R.Civ.P. 60(b)(4), and the Formas' counterclaim must be dismissed, *see* Fed.R.Civ.P. 12(h)(3). Since subject matter jurisdiction is a legal question and there are no disputes over the subsidiary facts pertaining to this issue, we review *de novo* the District Court's holding that it had jurisdiction over the Formas' counterclaim. *See Mackensworth v. S.S. American Merchant*, 28 F.3d 246, 252 (2d Cir.1994); *New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, 996 F.2d 21, 23 (2d Cir.1993).

5. Even though the Government had not previously moved to reinstate its original claim after the SAUSA had agreed to its dismissal, the District Court explicitly ordered in its June 1991 judgment that all claims by the Government brought against the Formas be dismissed with prejudice. The Government has not sought to appeal that part of the District Court's judgment dismissing its original claim.

## I. Jurisdictional Bars to Independent Refund Action

■ The doctrine of sovereign immunity persists in our law, *see generally Nevada v. Hall*, 440 U.S. 410, 414–16, 99 S.Ct. 1182, 1185–86, 59 L.Ed.2d 416 (1979); *United States v. Horn*, 29 F.3d 754, 761–62 (1st Cir.1994), and operates as a jurisdictional limitation on suits against the United States. As the Supreme Court has repeatedly said, "the United States, as sovereign, 'is immune from suit save as it consents to be sued … and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). *Accord FDIC v. Meyer*, —— U.S. ——, ——, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994).

■ Through 28 U.S.C. § 1346(a)(1), Congress has broadly consented to suits against the United States in the district courts for the refund of any federal taxes "alleged to have been erroneously or illegally assessed or collected, … or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." [6] But, other statutory provisions, as well as the Supreme Court's interpretation of § 1346(a)(1), establish a range of restrictions that qualify a taxpayer's right to bring an independent refund suit in the district court. Specifically, 26 U.S.C. § 7422(a) provides that a taxpayer must have first filed a "claim for refund or credit" with the IRS to maintain a refund suit; [7] and 28 U.S.C. § 1346(a)(1) has been read by the Supreme Court to require full payment of an assessed tax before a taxpayer can invoke the jurisdiction of the district courts for the refund of any portion of such tax, *see Flora v. United States*, 362 U.S. 145, 177, 80 S.Ct. 630, 647, 4 L.Ed.2d 623 (1960).

In other words, statutory provisions and court interpretations have placed a number of conditions on the explicit waiver of sovereign immunity instituted through 28 U.S.C. § 1346(a)(1). Thus, while the United States has provided for suits against the Government to recover taxes alleged to have been overpaid or wrongfully assessed and collected, it has also developed a series of procedural hurdles that taxpayers must surmount in order to maintain such suits. [8] As a consequence, even taxpayers with patently meritorious refund claims can be tripped up procedurally and be left without a remedy.

As the trial court found and the Formas themselves concede, at the time they filed their counterclaim, the Formas had not complied with the requirements for bringing an independent refund suit. They had not made full payment of the four disputed assessments, and they had not filed a timely administrative claim with the IRS for a refund or credit. Their failure to satisfy these prerequisites for initiating a refund suit would normally deprive a district court of subject matter jurisdiction over any such refund action,

6. In full, this section provides:

    The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of: (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

    28 U.S.C. § 1346(a) (1988).

7. This section provides:

    No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

    26 U.S.C. § 7422(a) (1988).

8. Another statutory provision, 26 U.S.C. § 6511(a), further conditions a taxpayer's right to maintain a refund suit by placing time limits upon when the taxpayer must lodge his or her administrative claim. This section provides that if a taxpayer is required to file a return with respect to a tax, any claim for a "credit or refund of an overpayment" of such tax must be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a) (1988).

and—as we have noted—would do so regardless of the suit's potential merits. *See Magnone v. United States*, 902 F.2d 192, 193 (2d Cir.), *cert. denied*, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990). Thus, unless the fact that the Government itself instituted an action against the Formas changed matters, the Formas would find themselves out of court.

## II. Counterclaims and Sovereign Immunity

■ Courts might very well have developed a rule that when the Government starts a suit, it fully waives sovereign immunity as to all counterclaims, or at least as to those counterclaims arising from the same transactions as the Government's claims. *See* 6 Charles A. Wright et al., *Federal Practice and Procedure* § 1427, at 194–95 (2d ed. 1990) [hereinafter Wright, *Federal Practice* ] ("It is possible, of course, to argue that when the United States commences an action it assumes the position of a private litigant and submits itself to the court's full jurisdiction as to any counterclaim that a defendant might interpose.").

But case law has quite clearly established the contrary. "[J]urisdictional limitations based on sovereign immunity apply equally to counterclaims against the Government," *United States v. Wissahickon Tool Works, Inc.*, 200 F.2d 936, 939 (2d Cir.1952), and jurisdiction for a "suit against the United States ... whether it be in the form of an original action or a set-off or a counterclaim ... does not exist unless there is specific congressional authority for it." *Nassau Smelting & Refining Works, Ltd. v. United States*, 266 U.S. 101, 106, 45 S.Ct. 25, 25, 69 L.Ed. 190 (1924). And, "it is clear that the United States, by filing [an] original complaint ... [does] not thereby consent to be sued on a counterclaim based upon a cause of action as to which it had not otherwise given its consent to be sued." *United States v. Silverton*, 200 F.2d 824, 826 (1st Cir.1952). *Accord United States v. Finn*, 239 F.2d 679, 682–83 (9th Cir.1956); *United States v. Hosteen Tse–Kesi*, 191 F.2d 518, 521 (10th Cir. 1951); *see also* 6 Wright, *Federal Practice* § 1427, at 194–96 & nn. 1–2 (noting that "the

courts have firmly rejected th[e] theory of a general waiver by implication" stemming from the Government's initiation of an action).

■ Still, as the Formas stress, case law has developed a significant limitation to the general bar of sovereign immunity in the context of counterclaims. Despite sovereign immunity, "a defendant may, without statutory authority, recoup on a counterclaim an amount equal to the principal claim." *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 511, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940). As the Ninth Circuit has put it, though "a suit in the name of the United States does not amount to a waiver of sovereign immunity subjecting the United States to an affirmative adverse judgment on a counterclaim ... [, the] counterclaim may be asserted against a sovereign by way of set off or recoupment to defeat or diminish the sovereign's recovery." *United States v. Agnew*, 423 F.2d 513, 514 (9th Cir.1970). *Accord In re Greenstreet Inc.*, 209 F.2d 660, 663 (7th Cir.1954); *see also* 3 James W. Moore & Richard D. Freer, *Moore's Federal Practice* ¶ 13.28, at 13–162 (2d ed. 1994) [hereinafter Moore, *Federal Practice* ]; 6 Wright, *Federal Practice* § 1427, at 197.

Courts have suggested differing rationales for this "recoupment-counterclaim exception" to sovereign immunity. An early Supreme Court case, *United States v. Ringgold*, 33 U.S. (8 Pet.) 150, 8 L.Ed. 899 (1834), implies that principles of equity and logic support the exception. In *Ringgold*, after recognizing that a direct suit cannot be maintained against the United States absent express statutory authority, the Court nevertheless suggested:

> when an action is brought by the United States, to recover money in the hands of a party, who has a legal claim against them, it would be a very rigid principle, to deny to him the right of setting up such a claim in a court of justice, and turn him round to an application to congress. If the right of the party is fixed by the existing law, there can be no necessity for an application to congress, except for the purpose of a remedy. And no such necessity can exist, when this right can properly be set up by

way of defence, to a suit by the United States.

*Ringgold,* 33 U.S. (8 Pet.) at 162.

Other cases from the Supreme Court and lower courts have indicated that a counterclaim seeking a set off or recoupment is properly conceptualized as a defense, arising out of the transaction that grounds the main action, and "therefore" will not be jurisdictionally barred when there is jurisdiction for the main action. *See Bull v. United States,* 295 U.S. 247, 262, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935); *FDIC v. Hulsey,* 22 F.3d 1472, 1486 (10th Cir.1994); *Livera v. First National State Bank of New Jersey,* 879 F.2d 1186, 1196 (3d Cir.), *cert. denied,* 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 322 (1989); *United States v. Frank,* 207 F.Supp. 216, 221 (S.D.N.Y.1962); *see also United States Fidelity & Guaranty Co.,* 309 U.S. at 511, 60 S.Ct. at 655 (citing *Bull* ). *See generally* 3 Moore, *Federal Practice* ¶ 13.02, at 13–13 n. 1 (discussing nature of an action for recoupment).

Most commonly, however, courts say that the recoupment-counterclaim exception to sovereign immunity derives from the concept of waiver—*i.e.* "when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment." *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967). *See Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d 931, 946 (Fed.Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994); *United States v. Johnson,* 853 F.2d 619, 621 (8th Cir.1988); *FSLIC v. Quinn,* 419 F.2d 1014, 1017 (7th Cir.1969); *United States v. Yonkers Board of Education,* 594 F.Supp. 466, 469 (S.D.N.Y. 1984); *see also The Siren,* 74 U.S. (7 Wall.) 152, 154 19 L.Ed. 129 (1868) (implicitly indicating that the principle of waiver provides the foundation for the recoupment-counterclaim exception to sovereign immunity); *United States v. Shaw,* 309 U.S. 495, 501–02, 60 S.Ct. 659, 661–62, 84 L.Ed. 888 (1940) (same).

Whatever the explanation, it has long been absolutely clear that the exception does not permit any affirmative recovery against the United States on a counterclaim that lacks an independent jurisdictional basis. Thus, in *United States v. Shaw,* 309 U.S. 495, 60 S.Ct.

659, 84 L.Ed. 888 (1940), the Supreme Court stated unequivocally that, in the context of a counterclaim for which Congress had not explicitly waived the United States's sovereign immunity, "no judgment may be entered against the government even though the court has ascertained, through its processes, that the government is actually indebted to the defendants." *Id.* at 504, 60 S.Ct. at 663. *Accord United States v. Eckford,* 73 U.S. (6 Wall.), 484, 491, 18 L.Ed. 920 (1867); *United States Fidelity & Guaranty Co.,* 309 U.S. at 512, 60 S.Ct. at 656; *see also United States v. Bedford Associates,* 618 F.2d 904, 917 (2d Cir.1980); *FDIC v. Hulsey,* 22 F.3d at 1486–87; *Genentech, Inc.,* 998 F.2d at 947; *Agnew,* 423 F.2d at 514; *Frederick,* 386 F.2d at 488; *FSLIC v. Quinn,* 419 F.2d at 1017. All of these cases conclude that "a party sued by the United States may recoup damages ... so as to reduce or defeat the government's claim ... though no affirmative judgment ... can be rendered against the United States." *In re Greenstreet,* 209 F.2d at 663.

The consequences of this case law for the Formas' counterclaim would seem quite clear. The Formas admittedly fail to meet the prerequisites for instituting an independent action against the United States. Their suit seeking an affirmative award thus lacks an independent jurisdictional basis. Therefore, their remedy would appear to be "limited to a dismissal of the government's claim." *Shaw,* 309 U.S. at 504, 60 S.Ct. at 663.

Though the Formas recognize these general principles, they nevertheless suggest that their ability to assert a recoupment counterclaim provides a basis for them to obtain an affirmative recovery in this case. They apparently make this claim because they believe that tax is different, and that in tax cases a counterclaim ought sometimes to be a valid basis for an affirmative recovery.

### III. Is Tax Different?

■ Tax is different. However, the differences between taxation and many other fields of law do not provide a principled basis for ignoring the Formas' failure to satisfy at least one of the established prerequisites for maintaining a tax refund action. And so we conclude that these differences do not sup-

port the Formas' attempt to obtain an affirmative recovery on their counterclaim.

Tax is different from many other fields of law in two somewhat-related ways: (1) in tax, payment precedes the opportunity to raise defenses in the district courts, *i.e.* a taxpayer must make full payment of an assessed tax before he or she can file suit in a district court to contest that assessment, and (2) the Government possesses a range of administrative enforcement mechanisms which allow the collection of assessed tax liabilities before the Government has to institute an action in court to collect on such claims.[9] *See generally* 4 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* ¶ 111.6, at 111–143 to 111–195 (2d ed. 1992) (discussing the Government's means for collecting unpaid taxes, and noting that "the pay-now, sue-later principle distinguishes the tax collector from other creditors"). These differences, which quite obviously place the Government in a better position to collect on alleged tax debts than individuals seeking to collect on private debts, are said to be necessary because, in the words of the Supreme Court, "taxes are the life-blood of government, and their prompt and certain availability an imperious need." *Bull v. United States,* 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935).

The fact that the Government is placed in an advantageous position when seeking to collect on alleged tax debts could have formed the basis for the development and application of somewhat different rules that would allow taxpayers to sue the Government for refunds in the district courts relatively easily. There is, after all, a distinct unseemliness in the Government's creation and obdurate implementation of many jurisdictional obstacles that taxpayers must overcome in order to maintain a refund suit. Since the Government gets to collect first and taxpayers can ask questions in the district courts only later, it might be appropriate that standard jurisdictional rules be viewed differently in tax to prevent taxpayers from being unduly precluded from raising refund claims in the district courts.[10]

■ But, as a general matter, this is not the law and jurisdictional rules in the tax context have not been developed and applied in a unique way. Rather, the standard jurisdictional principles typically operate in the same fashion in tax as in all other fields of law. *See United States v. Dalm,* 494 U.S. 596, 608–11, 110 S.Ct. 1361, 1368–70, 108 L.Ed.2d 548 (1990) (stressing the applicability of traditional jurisdictional precepts even in the context of a tax suit). Indeed, many courts have gone further and said that, in tax, jurisdictional rules "must be strictly construed, requiring compliance with even purely formal or technical conditions imposed." *Richardson v. United States,* 330 F.Supp. 102, 105 (S.D.Tex.1971); *see also Richardson v. Smith,* 301 F.2d 305, 306 (3d Cir.) ("[T]axation is a game which must be played strictly in accordance with the rules."), *cert. denied,* 371 U.S. 820, 83 S.Ct. 36, 9 L.Ed.2d 60 (1962); *Young v. United States,* 203 F.2d 686, 689 (8th Cir.1953) ("[G]eneral principles of equity may not be applied in tax cases, but claims must be brought within the scope of the statutory authority for their allowance.").

Such language notwithstanding, there are a few circumstances in which courts have held that taxpayer refund actions can avoid dismissal despite seemingly unmet jurisdictional requirements. Of course, in all of these instances, the courts have found ways of saying that the jurisdictional requirements were in fact satisfied. But these cases nonetheless might seem to give some support to

---

**9.** Notably, these differences are not absolute nor do they make the field of taxation unique. Though taxpayers must make payment first if they wish to raise defenses to a tax assessment in a district court, they can contest an assessment in the Tax Court before making any payment, *see* 26 U.S.C. §§ 6213–6214 (1988). Moreover, though the Government is endowed with a series of administrative collection mechanisms in the tax field, *see* 26 U.S.C. §§ 6331–6344 (1988), it possesses similar administrative collection mechanisms in other fields as well, *see, e.g.,* 18 U.S.C.

§§ 3611–3615 (1988) (setting out procedures for the collection of fines when imposed as a sentence).

**10.** Indeed, as the Supreme Court has said in a related context, this state of affairs cannot help but "tempt the equity-minded judge to seek for ways of relief in individual cases." *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 302, 67 S.Ct. 271, 273, 91 L.Ed. 296 (1946).

the Formas' suggestion that concepts of equity occasionally have been used, because of the special circumstances of tax law, to allow seemingly barred taxpayers a chance to get their money back. Three instances come to mind: (1) the *Bull* doctrine of "equitable recoupment," which allows the taxpayer to recover on an otherwise time-barred claim when the Government, after collecting monies as due under one section of the code, comes back and successfully taxes the same transaction again, as in fact due under another section of the code;[11] (2) the holding in *Freeman v. United States*, 265 F.2d 66 (9th Cir.1959), greatly relied on by the court below, which could be explained by the notion that a delayed application of the full payment rule is appropriate when the Government itself raises the issue of payment before a district court;[12] and (3) the rule, exemplified in *United States v. Kales*, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941), that an "informal" claim can satisfy the requirement of 26 U.S.C. § 7422(a).[13]

It is important to note that these three lines of cases do not in themselves permit the Formas to proceed with their counterclaim. The Formas concede that they do not come within the terms of the *Bull* doctrine. Though a delay in the application of the full payment rule could, in this case, result in a ruling that the Formas did meet its conditions, such a ruling would not allow them recovery, because there is another jurisdictional requirement they have failed to satisfy.[14] They must still deal with the prerequi-

**11.** In *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), the Supreme Court was confronted with a taxpayer who had paid estate tax on certain distributions, and yet was later subject to an IRS determination that he owed income tax on these distributions instead. After paying the assessed income tax, the taxpayer brought a timely and jurisdictionally proper claim for a refund of the income tax. The Supreme Court, though finding that the distributions were properly subject to income tax, held that the taxpayer could obtain a credit in the income tax refund suit for the amount of the estate tax overpayment made earlier even though the statute of limitations seemingly posed a jurisdictional bar to an independent suit for a refund of the estate tax. *See id.* at 259–63, 55 S.Ct. at 699–701. Noting that "[p]ayment precedes defense" in tax cases, the Court suggested that a taxpayer seeking a refund was properly viewed as "defending" a Government action seeking an award on the disputed tax claim, *see id.*, and therefore the taxpayer should be permitted to assert "any counter demand for recoupment ... by way of defense ... notwithstanding the statute of limitations [bar to] an independent suit against the Government." *Id.* at 262, 55 S.Ct. at 700.

Subsequent case law has made clear that the scope and reach of the equitable recoupment doctrine developed in *Bull* is quite narrow. *See United States v. Dalm*, 494 U.S. 596, 605 n. 5, 110 S.Ct. 1361, 1367 n. 5, 108 L.Ed.2d 548 (1990) (explaining that "equitable recoupment will lie only where the Government has taxed a single transaction, item, or taxable event under two inconsistent theories." (citing *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 299–300, 67 S.Ct. 271, 272–73, 91 L.Ed. 296 (1946)).

**12.** When the Government sues for an alleged deficiency on certain assessments within an action in which the taxpayer also seeks a refund of amounts already paid on the same assessments, the adjudication of the Government's claim will itself determine the amount of tax that was actually owing. Under these circumstances—since the Government, by bringing its own action, has itself squarely placed before the court the issue of whether the taxpayer has made full payment— one might reasonably conclude that it is appropriate to forestall a determination of whether the taxpayer satisfied the full payment requirement until the Government's claim on the taxes alleged to be owing is adjudicated. Were the full payment determination made before adjudicating the Government's claim in this context, (1) the taxpayer's refund action would always be dismissed, since the Government would not have brought its action had the taxpayer fully paid the disputed assessment, and (2) such a dismissal would present the possibility of "this absurdity: [for the taxpayer] would have to pay the balance of a tax which [the court has] said he does not owe before he could enforce a refund of the amount erroneously withheld." *Freeman v. United States*, 265 F.2d 66, 69 (9th Cir.1959).

**13.** The Supreme Court and lower courts have consistently held "that an informal claim is sufficient to satisfy the statutory prerequisite of [a timely administrative claim found in] 26 U.S.C. § 7422(a)." *United States v. Brunwasser*, 91–1 U.S.T.C. ¶ 50,047, 1990 WL 264715 (W.D.Pa. Dec. 11, 1990) (citing *Kales*, 314 U.S. at 194, 62 S.Ct. at 218). However, a satisfactory informal claim must at least alert the IRS that the taxpayer seeks a refund and must also indicate the grounds upon which the taxpayer's claim is based. *See, e.g., United States v. Felt & Tarrant Manufacturing Co.*, 283 U.S. 269, 272, 51 S.Ct. 376, 377, 75 L.Ed. 1025 (1931); *Barenfeld v. United States*, 442 F.2d 371, 374–75, 194 Ct.Cl. 903 (1971).

**14.** We need not decide whether, taking a cue from *Freeman v. United States,* it might be appropriate to forestall a determination concerning the

site that a refund claim be filed with the IRS, and it is clear that the Formas did not timely submit even an informal administrative claim for a refund.

Moreover, these three instances do not support the broader principle on which the Formas seek to base their claim, namely, that general equitable notions support refunds on *counterclaims* in tax cases. It is of great significance that none of the three examples discussed above in any way depend or rely upon whether a taxpayer is an original plaintiff or a counterclaimant. Indeed, all three were developed in the context of actions in which the taxpayer had brought suit as an original plaintiff. In *Bull*, the taxpayer initiated an income tax refund action and was given the right to recover estate taxes paid earlier, *see* 295 U.S. at 253, 258–63, 55 S.Ct. at 697, 699–701. In *Freeman*, the taxpayer initiated a refund action for partially-paid assessments, and the Government counterclaimed for amounts alleged still owing on the same assessments, *see* 265 F.2d at 68. In *Kales*, the taxpayer initiated a refund action after having originally made only an informal administrative claim to the IRS, *see* 314 U.S. at 190–91, 62 S.Ct. at 216–17. Thus, even if the "difference" of tax might in some rare cases have led courts, on equitable grounds, to countenance refund actions by seemingly barred taxpayers, none of

the cases cited by the Formas or discovered by us has made any distinction between plaintiffs and counterclaimants.

The Formas readily concede that, were they not counterclaimants, their claim would surely be barred by virtue of the traditional jurisdictional rules. Indeed, it is an essential aspect of their claim that it is their status *as counterclaimants* that justifies a special jurisdictional rule. But, as we have indicated, it is the general rule that "[p]roceedings upon [counterclaims] are governed by the same rules as direct suits," *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940), and the courts have consistently held (without extended discussion) that the same general rule applies in tax, so that jurisdiction in taxpayer counterclaims is lacking for any affirmative awards if the taxpayers do not satisfy the usual prerequisites to maintaining an independent suit, *see United States v. Wissahickon Tool Works, Inc.*, 200 F.2d 936, 939 (2d Cir.1952); *United States v. Nipissing Mines Co.*, 206 F. 431, 434 (2d Cir.1913), *cert. dismissed*, 234 U.S. 765, 34 S.Ct. 673, 58 L.Ed. 1582 (1914); *United States v. Pottorf*, 854 F.Supp. 748, 752 (D.Kan.1994); *United States v. Brunwasser*, 91–1 U.S.T.C. ¶ 50,047, at n. 1, 1990 WL 264715, at n. 1 (W.D.Pa. Dec. 11, 1990),[15] while the few instances on which the Formas

---

full payment rule until the Government's own claim concerning the taxes actually owed is resolved. Though the continued viability of *Freeman* has been questioned, *see Boynton v. United States*, 566 F.2d 50, 55 n. 10 (9th Cir.1977), it may still be sensible to delay an application of the full payment rule in this context. The full payment rule is ultimately a judicial construction of the jurisdictional provision, 28 U.S.C. § 1346(a)(1), that provides for refund suits in the district courts, *see Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), and the provision itself says nothing about a full payment requirement. Since a "traditional" application of the full payment rule in this context can lead to the absurd results discussed before, *see supra* note 12, it would not be unreasonable for a court to hold that Congress meant the full payment requirement to be applied in a delayed manner whenever the Government has itself placed the payment issue before a court. In any event, the issue is not before us today, since irrespective of full payment, the Formas have clearly failed to meet the condition that an administrative claim for a refund must be made.

**15.** It is unclear whether the court in *United States v. Lease*, 63–2 U.S.T.C. ¶ 9503 (S.D.N.Y. May 21, 1963), believed it had jurisdiction to grant an affirmative award to taxpayers seeking a refund on a counterclaim. Rejecting a motion by the Government to dismiss the taxpayers' counterclaim, the court stated that the "failure of the defendants to comply with certain statutory prerequisites does not bar the assertion of their counterclaim." *id.* This holding is probably best read as merely a proper application of the general "recoupment-counterclaim exception" to sovereign immunity. To the extent that the court in *Lease* was suggesting it had jurisdiction to grant the defendants an affirmative recovery, its holding was simply wrong. (Since the Government prevailed in its suit, *see United States v. Lease*, 346 F.2d 696 (2d Cir.1965), there was no further discussion concerning whether the defendants could in *Lease* obtain an affirmative award on their counterclaim.)

rely to suggest that *taxpayers* seeking refunds can obtain special treatment do nothing to undercut this general concept.

As a result, we see no valid ground for saying that the timely administrative claim requirement of 26 U.S.C. § 7422(a), which the Formas failed to meet, can be ignored simply because the taxpayers are counterclaimants. It follows that the District Court did not have jurisdiction to grant any affirmative awards on the Formas' counterclaims. Because the District Court had jurisdiction to entertain the Formas' counterclaim only to the extent that it sought to reduce the Government's recovery on its original claim, and the Government's original claim had been dismissed, the counterclaim no longer sought relief that the Court had jurisdiction to entertain. The counterclaim should therefore have been dismissed.

## CONCLUSION

The judgment awarded to the Formas in the District Court is hereby vacated, and this matter is remanded to the District Court with a direction to dismiss the Formas' counterclaim.